### In re DELMONICO'S.

(District Court, S. D. New York. January 4, 1919.)

BANKRUPTCY  249—RECEIVERS—CONTINUATION OF BANKRUPT'S BUSINESS.
 Receivers in bankruptcy of Delmonico's, after operating the business for three months at an increasing profit, granted leave to continue the same until sale or appointment of a trustee.

In Bankruptcy. In the matter of Delmonico's, alleged bankrupt. On application by receivers for leave to continue business. Granted.

Zalkin & Cohen, of New York City, for plaintiff.

Rosenberg & Ball, of New York City, for defendant.

MAYER, District Judge. This is an application by the receivers, Maurice P. Davidson and Grosvenor Nicholas, for leave to continue the business of Delmonico's, now being conducted by them, until a sale thereof or until the election of a trustee.

These receivers were appointed by this court on October 4, 1918. During the first month of operation, in October, the result showed a net loss of $10,000, in round numbers, on a total business of $39,000, in round numbers. November showed a net profit of some $9,500, on a total business of nearly $87,000, and December showed a net profit of upwards of $10,000, on a total business of $86,000, and it is estimated that the business for January, 1919, will show a substantial profit.

This encouraging progress has been accomplished by highly intelligent administrative effort on the part of the receivers, who have instituted necessary economies and have endeavored to eliminate waste, while at the same time keeping the business up to its traditional standards, and, indeed, improving the service to the patronizing public.

During the operation of the business by the receivers, all rent and taxes which have accrued during their occupancy have been paid. The business is substantial, and there are about 200 employés, many of whom have been at Delmonico's in one capacity or another for many years. "The Delmonico tradition of conservatism and excellence," the receivers state, has been "carefully preserved."

In addition to the gratifying results obtained by the application of good business methods, it is probably true that the business of this old-time restaurant has improved, to some extent at least, because of sentimental reasons. Delmonico's dates back to 1825, and was established about 1845 at what later became the site of the old Steven's Hotel at 7 Broadway. When croton water was introduced into the city, the occupants of the houses fronting on Bowling Green erected a fountain, consisting of a rough stone structure, over which the water was conducted by means of a pipe. The design called forth considerable adverse criticism from visitors from out of the city, and the incident and mention of Delmonico's are thus recorded by the poet John Godfrey Saxe:

> "And now Mr. Brown
> Was fairly in town,
> In that part of the city they used to call 'down,'
> Not far from the spot of ancient renown
> As being the scene
> Of the Bowling Green,
> A fountain that looked like a huge tureen
> Piled up with rocks, and a squirt between.
>           *       *       *       *
> And he stopped at an Inn that's known very well,
> 'Delmonico's' once—now 'Steven's Hotel';
> (And to venture a pun which I think rather witty.
> There's no better Inn in this Inn-famous city!)"

"(Note: The Greatest Street in the World—Broadway. By Stephen Jenkins, Knickerbocker Press.)"

About 58 years ago, in 1861, Delmonico's moved from the Bowling Green section to Broadway and Fourteenth street. In 1876 the next move was made to Twenty-Sixth street and Fifth avenue, and in 1897 the establishment again moved, this time to Forty-Fourth street and Fifth avenue, where it now is. These moves of this famous restaurant mark the progress of the active life of the city as it gradually developed toward the north, although each move was attended with the usual foreboding prophecy that the location was too far uptown and ahead of its time.

Throughout these many years of existence, now rapidly reaching a century, the effort of Delmonico's has been to adhere to some simple and comfortable traditions. The theory is that the relation of host and guest still exists. Some of the well-known figures have gone, such as the white-haired John (quite typical), who, it is said, after three

score and ten of a life of urbanity towards the patrons and thrift for himself, now spends a vigorous and happy old age on his New Jersey farm.

The guest still continues to have identity. He is respectfully, but cheerfully, greeted by name as he enters his favorite room or takes his favorite seat. While across the table he is discussing the affairs of the day, or closing a business transaction, or telling his tribulations to his lawyer, the waiter does not hover about, but approaches only when he is beckoned. In the quiet and dignified room in which at the end of the day busy men of the city are wont to dine with each other, one may hear oneself think as well as talk, without the din of the orchestra, and with only the occasional faint sound of the strains of music from the more pretentious rooms where those disposed to be more formal may gather.

In the banquet halls great and important addresses have been made at public gatherings by leaders of thought in their day and generation. Here, too, many young folks have gone forward into life with the good wishes of their relatives and friends. Within these walls the débutante has attended her first formal party, under circumstances different only as to time and dress from those which her mother and grandmother remember.

Throughout all the years, the effort has been to keep for the New Yorker and the visitor from elsewhere a place of dignity and quiet, and to resist those innovations, some of which have resulted in eliminating the individual and depriving the patron of that individual attention for which at least some guests still crave.

Those who know this history and these characteristics have been loath to see Delmonico's go. It is their loyalty which in part, at least, has been responsible for possibilities of a future, and the hope (in which this court will assist) is that the business may continue, and go on, so that the institution may be kept alive, and not merely find its place on a page of some book reminiscent of New York.

Application granted.